J-A28019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

E.G.O-R.                             :      IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                 Appellant           :
          v.                         :
                                     :
                                     :
                                     :
D.J.R.                               :
                                     :
                                     :      No. 480 MDA 2018

Appeal from the Order Entered February 13, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2010-1941, 2013-00087-S, 622113826

E.G.O-R.                             :      IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                                     :
                                     :
                                     :
                                     :
          v.                         :
                                     :
                                     :
D.J.R.                               :      No. 509 MDA 2018
                 Appellant

Appeal from the Order Entered February 13, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2010-1941, 2013-0087S

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                        **FILED MARCH 06, 2019**

In this consolidated appeal and cross-appeal, E.G.O-R. (hereinafter

"Mother") and D.J.R. (hereinafter "Father")[1] separately challenge the trial

_____

[1] As this case involves issues regarding child support, we identify the parties by their initials so as to protect the identity of the minor child. We have amended the caption accordingly.

court's order, entered on February 13, 2018, granting Father's petition to modify child support and petition for special relief. We affirm.

The trial court has ably summarized the underlying facts and procedural posture of this case:

[Mother] and [Father] were married on May 25, 1991. During the marriage, the parties had three children: [G.O.R. (born in April 1995), K.O.R. (born in September 1997), and S.O.R. (born in March 2000)]. . . .

Mother filed a divorce complaint on May 7, 2010. On September 2, 2010, the parties executed a Marriage Settlement Agreement (MSA)[,] which was incorporated, but not merged, into a final decree in divorce entered on October 18, 2010. In the MSA, the parties addressed all aspects of their divorce, including dividing their assets and liabilities, establishing custody, and determining child support. In pertinent part, under the [MSA], Father received full ownership of [redacted], which owns and operates [redacted], a student bar in downtown State College, Pennsylvania[,] and a parcel of real estate; Mother received ownership of another company, [redacted], the remaining real estate, and all marital debts; and[,] Father agreed to pay Mother [$3,000.00] monthly in child support until their youngest child's emancipation. [Specifically, the child support provision reads:

3.15 SUPPORT FOR CHILDREN

The parties agree that Father shall pay Mother child support in the sum of $3,000.00 per month, which support shall be modifiable based on changed circumstances pursuant to 23 Pa.C.S.A. § 3105(b). The parties acknowledge that said sum is currently appropriate under the Pennsylvania Child Support guidelines given the parties' respective incomes and cash flow available for support and the expenses that the parties have maintained with respect to the children. Said monthly payment of support shall terminate when the

- 2 -

parties' youngest child graduates from high school or reaches age 18, whichever last occurs. . . .

MSA, dated 9/2/10, at 25-26.] . . .

[Under the MSA,] the remaining real estate included the marital property and the mortgages encumbering the property[;] Mother was required to refinance the mortgages so that Father [was] no longer jointly liable or list the property for sale within four [] years. [The MSA provision regarding the marital residence reads:

> [Mother] shall, on a regular basis, attempt to transfer the Marital Residence Mortgages to her name alone and shall do so when permissible by the lenders involved. In the event [Father] is not released from the liability of the Mortgages and the notes securing the same within 4 years from the date of execution, [Mother] shall, at [Father's] request, list the Marital Residence for sale and exercise her best efforts to sell the same as soon as possible so that [Father] is relieved of liability with respect to the Mortgages or the notes securing the same.

*Id.* at 7].

On February 26, 2013, Father filed a [petition to modify his child support obligation. Within the petition, Father claimed that the emancipation of the oldest child constituted a change in circumstances warranting a reduction in his child support obligations. On December 30, 2014, the trial court denied Father's petition. The trial court concluded that, under the MSA, Father was required to pay $3,000.00 per month in child support and that, under the agreement,] . . . the emancipation of the oldest child did not constitute a change in circumstances.

Father appealed [and, on March 1, 2016, the Superior Court affirmed the trial court's order. *E.G.O.-R. v. D.J.R.*, 144 A.3d 185 (Pa. Super. 2016) (unpublished memorandum) at 1-3]. . . .

Father filed a Petition to Modify Support *Nunc Pro Tunc* on April 8, 2016[,] alleging a change in Mother's circumstances. . . . [Further, on November 19, 2016,] Father filed a Petition

- 3 -

for Special Relief . . . [,] seeking to enforce the provision in the MSA requiring Mother to either remove Father from the mortgages encumbering the marital residence within four [] years of the execution of the MSA or sell the property. Father remains liable on the mortgages encumbering the property. Mother filed an Answer to the Petition for Special Relief[,] arguing Father's support arrearages prevented her from refinancing the marital property.

A hearing was held on December 12, 2016 and . . . April 21, 2017. [At the conclusion of the hearing, the trial court made the following findings of fact]:

1. Mother sold [redacted] and the rental properties distributed to her in the MSA, and used the proceeds to pay off the debt distributed to her in the MSA. Mother no longer has any income from [redacted].

2. Mother invested $100,000.00 of the proceeds from the sale of the properties into a real estate fund in Las Vegas. Mother predicts this investment will have a 10% return per year.

3. Mother was employed with AssetMark earning $75,000.00 per year, possibly $80,000.00 after a raise, but has since ended her employment there as the company moved operations to the west coast and Mother opted to remain in Centre County. Mother was laid off effective March 1, 2017 and received a severance package of $2,500.00 plus [four weeks'] pay.

4. Mother now receives unemployment [compensation] benefits of $570.00 per week.

5. Mother retains ownership of the martial residence and rents out the residence for events in the area and earns approximately $3,000.00 per year by doing so.

6. Only one minor child remains residing with Mother. The other two are enrolled at the Pennsylvania State University and do not reside with Mother full time.

7. Father received $29,389.00 in 2015 from employment with [redacted], but ended his employment there in order to care for his mother, who has since passed away.

8. Father received $122,106.00 in distributions from [redacted] in 2015, and $116,258.00 in 2016.

9. Father was working full time on the Karoondinha Music Festival without compensation.

10. Father also received an inheritance in 2016 consisting of $100,000.00, a 1/3 interest in an apartment building on Corl Street [(hereinafter "the Corl Street Property")], and permission to reside in his mother's former residence, which he owns with his brother and sister-in-law, for five years without paying rent other than upkeep and property taxes.

11. The Corl Street Property was jointly owned by Father, his brother, and his sister-in-law. Father and his brother purchased the 1/3 interest of Father's sister-in-law for $350,000.00, and the two plan on doing renovations.

12. Father's truck payment of $589 per month is covered by the income generated by the Corl Street Property.

13. Mother has not secured a release of liability for Father on the Marital Residence despite requests to do so, and Father's name remains on the mortgages for which he may be held personally liable. Mother has not listed the residence for sale.

14. Mother has taken out a line of credit on the residence and pays $1,550.00 per month in addition to the $2,733.00 she already pays on the mortgages and taxes associated with the property.

15. Father and his mother sold the Fairwood Lane property they jointly owned and Father used his 50% of the proceeds to pay all support arrearages in full. He has remained current on support.

Trial Court Opinion, 11/14/17, at 1-5 (some internal capitalization omitted).

On November 14, 2017, the trial court entered an order granting Father's petition to modify child support and petition for special relief. As to the petition to modify child support, the trial court noted that the parties' MSA permitted modification of Father's child support obligation upon a showing of changed circumstances. *Id.* at 6; MSA, 9/2/10, at 25-26; *see also* 23 Pa.C.S.A. § 3105(b) ("A provision of an agreement regarding child support . . . shall be subject to modification by the court upon a showing of changed circumstances"). The trial court concluded that Father proved a change in circumstances because: since the signing of the MSA, Mother's earning capacity increased significantly; "Mother no longer has liabilities to pay off after the sale of the businesses and has an investment in Las Vegas she believes will yield 10% or more per year;" and, "two of the children have been emancipated since the MSA [was] signed[] and no longer reside primarily with Mother." Trial Court Opinion, 11/14/17, at 7. The trial court thus granted Father's modification petition and remanded the case to the domestic relations section, "for calculation of [child] support consistent with [the trial court's] findings." *Id.* at 11. Further, with respect to Father's petition for special relief, the trial court concluded that Mother was required to "refinance the mortgages so that Father is no longer jointly liable or list the Marital Residence for sale within 120 days." *Id.* at 10.

Mother filed a motion to reconsider the November 14, 2017 order and, on December 12, 2017, the trial court entered a timely order expressly granting reconsideration of the order. *See* Trial Court Order, 12/12/17, at 1.

On January 22, 2018, the trial court held argument on Mother's motion to reconsider and, on February 13, 2018, the trial court entered an order partially modifying and partially reaffirming its prior, November 14, 2017 order. The February 13, 2018 order declares:

> AND NOW, this 13th day of February, 2018, [Mother's] Motion for Reconsideration is GRANTED in part. The [trial c]ourt concludes its [prior] determination that [a change in circumstances was established because] the two oldest children are emancipated was in error. Emancipation is not a change of circumstances, and support shall be calculated for three children based on the incomes set forth in the November 14, 2017 Order. The remainder of the Motion for Reconsideration is DENIED.

Trial Court Order, 2/13/18, at 1.

On February 22, 2018, the trial court calculated Father's child support obligations, in accordance with its November 14, 2017 and February 13, 2018 orders and findings. The trial court's February 22, 2018 order declared that Father was required to pay $2,045.00 per month in child support.[2] Trial Court Order, 2/22/18, at 1.

---

[2] The trial court's February 13, 2018 order did not resolve all claims related to the award of child support, as the order contemplated that there would be further proceedings to establish Father's specific monthly payment obligations. *See* Trial Court Order, 11/14/17, at 11 (the trial court remanded the case to the domestic relations section, "for calculation of [child] support consistent with [the trial court's] findings"). Thus, the February 13, 2018 order was not a final, appealable order as to the award of child support. *See* ***Deasy v. Deasy***, 730 A.2d 500, 502-503 (Pa. Super. 1999) (holding that, in the context of a child support award, the final, appealable order is the one that "dispos[es] of all claims as related to [the] award of child support"); ***D.L.H. v. R.W.L.***, 777 A.2d 1158, 1158 (Pa. Super. 2001) ("[i]n a support case, the final order is the order directing payment of support or dismissing

Mother filed a timely notice of appeal on March 15, 2018 and Father filed a timely cross-appeal on March 26, 2018. Mother raises three claims to this Court:

> 1. Did the trial court abuse its discretion in determining Father met his burden of proving a change in circumstances and thereafter reviewing the parties' incomes and circumstances *de novo*?
>
> 2. Did the trial court abuse its discretion in the *de novo* determination of Father's income?
>
> 3. Did the trial court abuse its discretion by requiring Mother to refinance the liens encumbering the marital residence within 120 days given the extended length of time Father carried substantial arrears in this support matter, the damage Mother suffered relative to her credit rating, and the amount of marital debt Mother assumed in exchange for a bargained-for child support amount pursuant to the parties Marital Settlement Agreement?

Mother's Brief at 4 (internal emphasis and some internal capitalization omitted).

Father raises one claim on appeal:

---

the support complaint"); **see also West v. West**, 446 A.2d 1342, (Pa. Super. 1982) ("'interim order' compelling [the husband] to pay [the wife] '$180 per week for support and maintenance until further order'" was not a final, appealable order because it "invite[d the husband] back into court") (some internal capitalization and corrections omitted). Nevertheless, on February 22, 2018, the trial court entered its final child support award, which directed that Father pay $2,045.00 per month in child support. Trial Court Order, 2/22/18, at 1. We note that Mother filed her notice of appeal on March 15, 2018 – which was within 30 days of both the February 13, 2018 and February 22, 2018 orders. Father then filed his cross-appeal on March 26, 2018 – which was within 14 days of the date Mother filed her notice of appeal. **See** Pa.R.A.P. 903(b). Therefore, the appeals in this case were timely filed and we have jurisdiction over the entirety of this appeal.

1. Did the trial court abuse its discretion by failing to properly apply the Pennsylvania Support Guidelines in establishing Father's obligation for child support, as required by 23 Pa.C.S. § 4322, 23 Pa.C.S. § 4323(a), Pa.R.A.P. No. 1910.16-1(b), and the prevailing jurisprudence of the Pennsylvania appellate courts by forcing [Father] to pay child support for two children to which he no longer owes a duty of support?

Father's Brief at 7.

We will initially review Mother's claims.

Mother's first two claims on appeal contend that the trial court erred when it modified Father's child support obligations. As our Supreme Court explained:

We review child support awards for an abuse of discretion. A court does not commit an abuse of discretion merely by making an error of judgment. Rather, a court abuses its discretion if it exercises judgment that is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. Th[e Pennsylvania Supreme] Court has further observed that we will not disturb a support order unless the trial court failed to consider properly the requirements of the rules governing support actions. Additionally, [where an] appeal presents questions of law, . . . our standard of review is *de novo* and our scope of review is plenary for such questions.

**Hanrahan v. Bakker**, 186 A.3d 958, 966 (Pa. 2018) (internal quotations and citations omitted).

Father's child support obligations towards Mother were originally established in the parties' marital settlement agreement ("MSA"). The trial court found, and the parties agree, that the MSA was incorporated, but not merged, into the divorce decree. **See** Trial Court Opinion, 11/14/17, at 2;

- 9 -

Mother's Brief at 13; Father's Brief at 10. As we have held, "parties can make an agreement as to child support if it is fair and reasonable, made without fraud or coercion, and does not prejudice the welfare of the children." *Kraisinger v. Kraisinger*, 928 A.2d 333, 340 (Pa. Super. 2007). With respect to marital settlement agreements in general:

> Marital settlement agreements are private undertakings between two parties, each having responded to the "give and take" of negotiations and bargained consideration. A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. . . .
>
> . . .
>
> When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.
>
> . . .
>
> In ascertaining the intent of the parties to a contract when unclear from the writing itself, the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions. [When the intent of the parties is unclear, t]he court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

- 10 -

*Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005) (internal citations and some internal quotations omitted).

In conducting our review of a marital settlement agreement, we note that "contract interpretation is a question of law [and, therefore,] this Court is not bound by the trial court's interpretation" of the agreement. *Id.* at 1257 (internal quotations and citations omitted). "However, we are bound by the trial court's credibility determinations" and, "[w]hen interpreting a marital settlement agreement, the trial court is the sole determiner of facts." *Id.* at 1257-1258. We will not overturn a trial court's factual determination in the absence of an abuse of discretion. *Id.*

Mother claims that the trial court erred when it determined that Father met his burden of proving a change in circumstances, so as to warrant a modification of his child support obligations. In particular, Mother claims, the trial court erred in determining that she had a material change in her income because: 1) "the trial court could not possibly determine that either of the parties experienced a [] change in income . . . when[, in the trial court's 2010 and 2014 rulings,] the trial court [] determined it could not compute either of the parties incomes" and 2) Father suffers from unclean hands because he "purposefully placed Mother in a position where she had no choice but to sell a portion of the marital business and obtain employment." Mother's Brief at 28. These claims fail.

First, Mother claims that the trial court erred in finding that she experienced a material change in income because, in 2010 and 2014, it had

determined that it could not compute her income.  Mother's Brief at 30.  This claim is absolutely meritless, given that, during the December 12, 2016 modification hearing, Mother specifically testified that her "income has gone from around $50,000 in 2010, to $36,000 in 2012, to zero in 2013, up to [$75,000 or] $80,000 presently."  N.T. Modification Hearing, 12/12/16, at 22.  Therefore, the trial court had ample grounds for determining that Mother experienced a material change in income since the 2010 signing of the MSA, thus warranting a modification of Father's support obligations.  Mother's claim to the contrary fails.

Next, Mother argues that "the doctrine of unclean hands" should prohibit Father from experiencing a downward modification in his child support obligations because "Father's repeated attempts to avoid his child support obligation to Mother" forced Mother to enter the workforce and sell a portion of the marital business.  Mother's Brief at 33.  This claim is also meritless.

"The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue.  The doctrine is derived from the unwillingness of a court to give relief to a suitor who has so conducted himself as to shock the moral sensibilities of the judge."  **Morgan v. Morgan**, 193 A.3d 999, 1005 (Pa. Super. 2018) (internal quotations, citations, and emphasis omitted).  "Application of the unclean hands doctrine is confined to willful misconduct which concerns the particular matter in litigation."  **Shapiro v. Shapiro**, 204 A.2d 266, 268 (Pa. 1964).

Mother claims that the doctrine of unclean hands prohibits Father from receiving a downward modification of his child support obligations. However, this claim immediately fails, as the trial court never made any finding that Father was guilty of willful misconduct, fraud, or deceit related to his payment of child support – and Mother does not claim that the trial court erred in failing to make such a finding. *See* Mother's Brief at 31-33. Moreover, to the extent Mother could be found to have raised such a claim of error, the claim would fail because, when the trial court ruled against Mother's claim, the trial court necessarily made a factual finding that Father did not act fraudulently, deceitfully, or with willful misconduct related to his payment of child support – and this factual finding, in no way, constitutes an abuse of discretion.

For Mother's second numbered claim on appeal, Mother contends that the trial court erred in determining Father's income. In her brief to this Court, Mother contends that the trial court erred when it limited its review of Father's income to his Federal Income Tax Returns and that the trial court should have considered a number of additional sources of Father's income. *See* Mother's Brief at 36-37. Mother also claims that, "[d]ue to the unavailability of information relative to the Estate of [Father's mother] and the complete lack of reliable information regarding the rental income generated by the Corl Street property, the appropriate remedy is for [this Court] to remand the matter to the trial court for a full and accurate determination of Father's income available from all sources." *Id.* at 38.

Mother's claims are waived, as she did not specify any of these claims in her Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal and the trial court, consequently, did not address any of these claims in its Rule 1925(a) opinion. *See* Trial Court Opinion, 5/8/18, at 1-6. Certainly, Mother's Rule 1925(b) statement vaguely and simply claimed: "the trial court erred in the determination of [Father's] income." Mother's Rule 1925(b) Statement, 4/24/18, at 2 (some internal capitalization omitted). This statement does not specify how the trial court erred in determining Father's income and the statement does not declare that the record was undeveloped regarding income from the estate of Father's mother or the rental income generated by the Corl Street Property. *See id.* Further, because of Mother's vague Rule 1925(b) statement, the trial court's Rule 1925(a) opinion simply declared:

> [Mother] alleges the [trial] court erred in determining [Father's] income. The [trial] court found [Father's] income to be $155,358.00 based on income from the [redacted], income and benefits from rental property, charitable contributions, and potential income from employment. [Father,] his brother, and [Father's] accountant all testified regarding [Father's] income. The [trial] court properly determined [Father's] income.

Trial Court Opinion, 5/8/18, at 5 (some internal capitalization omitted).

We have explained:

> issues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an

- 14 -

appellant wishes to raise on appeal. A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all. The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver.

***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa. Super. 2011) (internal quotations, citations, and corrections omitted).

Mother's Rule 1925(b) statement was overly vague and did not challenge the trial court's decision regarding Father's income on any specific basis. ***See*** Mother's Rule 1925(b) Statement, 4/24/18, at 2. As a result, Mother did not place the trial court on notice that she was challenging the decision on any of the grounds first raised in her brief. Mother's current claim on appeal is, thus, waived.

Finally, Mother claims that the trial court erred in requiring that she refinance the liens encumbering the former marital residence or sell the former marital residence within 120 days. According to Mother, the trial court's decision was an abuse of discretion because, during the period between March[] 2013 and April[] 2017, Father's [child support] arrears balance grew to in excess of $82,000.00" and this "created the circumstance of Mother not being able to refinance the marital residence." Mother's Brief at 40. Mother's claim fails.

Our Supreme Court has emphasized:

When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this

- 15 -

discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, we will not disturb the ruling of the trial court.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1140 (Pa. 2007) (internal citations omitted).

The trial court explained the basis for its decision:

The MSA is clear that Mother cannot keep Father liable for the mortgages on the Marital Residence, and must make efforts to have him removed from these mortgages. Mother has failed to remove Father from the loans, and has further put Father at risk by taking out additional lines of credit on the Marital Residence. Mother was granted a reprieve due to Father owing substantial support arrearages, but Father has now paid all support arrearages in full and is current on his support payments. Mother does not appear to have attempted to comply to remove Father's name, but has continued to argue the provision is unenforceable because of Father's unclean hands.

The MSA was executed over seven years ago, and Mother has not complied with the provision requiring her to release Father from liability on the mortgages. Father is completely up to date on support payments, and Mother must refinance so that Father is no longer jointly liable or list the Marital Residence for sale within 120 days.

Trial Court Opinion, 11/14/17, at 10.

Here, given the provision in the MSA (which specifically directs Mother to transfer the mortgage to her name alone or sell the property within four years of the date of the MSA), the fact that Mother has not complied with the

MSA provision (despite the fact that the MSA was executed in 2010), and the fact that Father is current on his support payments, we conclude that the trial court did not abuse its discretion when it ordered Mother to "refinance so that Father is no longer jointly liable or list the Marital Residence for sale within 120 days." **See** Trial Court Opinion, 11/14/17, at 7. Simply stated, given the facts of this case, it cannot be said that the trial court's decision was "manifestly unreasonable" (and it certainly cannot be said that the trial court's decision was "the result of partiality, prejudice, bias or ill-will"). As such, the trial court's decision was not an abuse of discretion and Mother's claim on appeal fails.

Father raises one claim on appeal. According to Father, the trial court erred when it "forc[ed Father] to pay child support for two children to which he no longer owes a duty of support." Father's Brief at 43. This claim fails.

"In Pennsylvania, the duty to support a child generally ceases when the child reaches the age of majority, which is defined as either [18] years of age or when the child graduates from high school, whichever comes later." **Style v. Shaub**, 955 A.2d 403, 408 (Pa. Super. 2008). Here, two of the parties' three children are over the age of 18 and attend Penn State University; only one child is under the age of 18 and lives at home. Therefore, looking solely to the general rule, Father would be correct in asserting that his duty to pay child support has concluded with respect to two of his three children. Nevertheless, parties may, obviously, agree to support their children past the age of majority. **See** Pa.R.C.P. 1910.19(e)(3) (recognizing an exception to

the general rule of non-support for a child who has reached the age of majority, where there exists an "agreement between the parties requiring payments for the benefit of the child after the child has reached age eighteen (18) or graduated from high school").

In this case, the trial court found the parties agreed that Father's child support obligations would be "for all three children until the youngest is emancipated, which [was not going to] occur until 2018." Trial Court Opinion, 5/8/18, at 3. We agree with the trial court's interpretation of the MSA. Indeed, the trial court previously interpreted the child support provision of the MSA and held that, contrary to Father's interpretation, "a more reasonable interpretation of the [MSA] is that the level of $3,000 monthly child support payments shall terminate when the youngest child[] 'graduates high school or reaches age 18, whichever last occurs,' **irrespective of either older child's emancipation**." Trial Court Opinion, 12/30/14, at 2-3 (emphasis added). Father then challenged the trial court's interpretation in a previous appeal to this Court and we concluded that Father's claim on appeal failed on the merits. **E.G.O.-R. v. D.J.R.**, 144 A.3d 185 (Pa. Super. 2016) (unpublished memorandum) at 2-3.

Essentially, Father is now asking this Court to revisit the trial court's express finding – which we affirmed on appeal – that the child support provision in the parties' MSA expressly contemplated that Father would, in fact, support two of his three children past the age of majority. **See** Trial Court Opinion, 12/30/14, at 2-3; **E.G.O.-R. v. D.J.R.**, 144 A.3d 185 (Pa.

Super. 2016) (unpublished memorandum) at 2-3. We will not do so. Father's claim on appeal, thus, fails.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/06/2019